James D. Schneller pro se
500 East Lancaster Avenue # 111d
Radnor, PA 19087
610-688-9471
schnlj@aol.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Heirs And Beneficiaries Of Marjorie C. Schneller, James D. Schneller, Trustee Ad Litem; :
Estate Of Marjorie C. Schneller, James D.Schneller, Trustee Ad Litem; :
Estate Of Marjorie C. Schneller, Marjorie Zitomer, Personal Representative; :
Estate Of George H. Schneller, James D. Schneller, Personal Representative :
plaintiffs.

CIVIL ACTION

NO. 08-cv-1003

v. :

Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1 :
defendants

COMPLAINT

I. PLAINTIFFS

1. Marjorie C. Schneller was born on September 27, 1920, and died on March 31, 2002 then being treated at Fox Subacute Nursing Home, in Plymouth Meeting, County of Montgomery, Commonwealth of Pennsylvania.

2. Marjorie C. Schneller, was a resident of Tredyffrin Township, Chester County, Pennsylvania, up until a 9 month period of hospitalization and nursing care, prior to her death on March 30, 2002. Marjorie C. Schneller was married to George H. Schneller. George H. Schneller, who resided at the same address, died 5 months earlier, on October 30, 2001.

3. James D. Schneller is a son of Marjorie and George Schneller. James D. Schneller is a personal representative of the estate of George H. Schneller, and is an heir of Marjorie Schneller and George Schneller.

4. James D. Schneller joins the involuntary plaintiff Marjorie Zitomer, of 1 Mercer Street, McKownville, NY 12203, who is the personal representative of the Estate of Marjorie C. Schneller. James Schneller has applied for leave to sue in the name of or on behalf of the personal representative of the Estate of Marjorie C. Schneller.

II. DEFENDANTS

5. Defendant Able Home Care Inc. of P.O. Box 964, Bryn Mawr, PA 19010, is a home care agency located in Delaware County, Pennsylvania.

6. Marianne Lilienthal is an owner and manager of Able Home Care Inc.. Her last known address in the Commonwealth of Pennsylvania was 640 Old Lancaster Rd., Bryn Mawr, PA 19010.

7. Holly Nelson of 715 Cricket Ave., Ardmore, PA 19003 is a resident of Delaware County. Holly Nelson is an owner and manager of Able Home Care Inc..

8. Jane Doe 1 is a home care aide employed by Able Home Care Inc.. The identity of Jane Doe 1 has been concealed by defendants.

III. JURISDICTION AND VENUE

9. The Court has jurisdiction pursuant to 28 U.S.C.§1331 because the defendants conspired for the purpose of impeding, hindering, obstructing, and defeating, the due course of justice in the

Commonwealth of Pennsylvania, and otherwise acted, to deny plaintiffs the equal protection of the laws and exercising of constitutional rights and privileges, and to injure or murder they and injure their property in retaliation for lawfully enforcing and attempting to enforce, their rights, and the rights of class(es) of persons, and so defendants are liable to plaintiffs under 42 U.S.C.A.§ 1985(3) entitled Conspiracy to interfere with civil rights.

10. The Court has jurisdiction pursuant to 28 U.S.C.§1331 and 42 U.S.C.A.§ 1985(2) entitled Conspiracy to interfere with civil rights - Obstructing Justice, because the defendants conspired for the purpose of preventing by force, intimidation, and threat, and caused to be done acts in furtherance of the object of such conspiracy, including through severe injury and murder, the having and exercising rights and privileges and the equal protection of the laws of citizens of the United States, and to cause impeding, hindering, obstructing, and defeating, the due course of justice in the Commonwealth of Pennsylvania; and to so injure plaintiffs in person and property, in retaliation for lawfully enforcing and attempting to enforce, their rights, and the rights of a class(es) of persons, to the equal protection of the laws, due processs of law, and access to the courts.

11. The Court has jurisdiction pursuant to 28 U.S.C.§1331 because the defendants acts individually, conspiratorially, and under color of statute, regulation, custom, and usage, of the Commonwealth of Pennsylvania, subjected plaintiffs, and caused plaintiffs to be subjected, to the deprivation of equal protection of the laws, and deprivation, without due process of law, of essential rights and liberties which are guaranteed by the United States Constitution, and did so in retaliation for exercise of said rights, including the right to life, liberty, and property, to free speech, to privacy, and their right to fundamental privileges and immunities, and so defendants are liable to plaintiffs under 42 U.S.C.A.§ 1983 for a claim of deprival of civil rights.

12. The Court has jurisdiction pursuant to 28 U.S.C.§1331 because the defendants, having knowledge that any and all of the wrongs mentioned in this complaint, were conspired to be done and were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do; and because said wrongful acts were committed; and additionally because the death of Marjorie Schneller was caused by said wrongful acts and neglect. Defendants are therefore liable to plaintiffs under 42 U.S.C.A.§ 1986 for neglect to prevent. Defendants are liable under a cause of action for failure to warn.

13. The Court has jurisdiction over the causes of action against Marianne Lilienthal and Jane Doe 1, pursuant to 28 U.S.C.§1332 and Article III of the United States Constitution, because

there is complete diversity of citizenship between them and plaintiffs, and because the amount in controversy between each plaintiff and each defendant exceeds $75,000.

14. The Court has jurisdiction over all claims against Marianne Lilienthal and Jane Doe 1, pursuant to 42 Pa.C.S. §5532, because the time of their absence from the Commonwealth of Pennsylvania or residence within the Commonwealth of Pennsylvania under a false name is not a part of the time within which the action or proceeding must be commenced, and Marianne Lilienthal and Jane Doe 1, who were within jurisdiction at the time of the occurrences herein alleged, departed from this Commonwealth and remained continuously absent from this Commonwealth, for over four months, up to present, and/or resided within this Commonwealth under a false name which is unknown to the plaintiffs, up to present.

15. The Court has jurisdiction over the complaint pursuant to 28 U.S.C.§1343 because the complaint is a civil action to recover damages for injury to life, person, and property, due to the deprivation of constitutional rights, in conspiracy, and retaliation for exercising of said rights, and for neglect to prevent; and to redress the deprivation, under color of State law, statute, ordinance, regulation, custom or usage, of rights secured by the Constitution of the United States and by Acts of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; all of these being civil actions mentioned in sections 1983 and 1985 of Title 42.

16. This Court has jurisdiction pursuant to 28 U.S.C.§1331 and 42 C.F.R.§ 1983, because the defendants, including in their acts which constitute federal questions, or concurrently and integrally therewith, have violated statutes enacted by Congress including 29 U.S.C. § 794 et seq., 42 U.S.C.§ 2000a et seq , 42 U.S.C.A. § 2000bb et seq.; 42 U.S.C. § 3001 et seq.; 42 U.S.C § 10400 et seq.; 42 U.S.C. § 6101 et seq.; 42 U.S.C § 13981 et seq.; 18 U.S.C.§ 113, 18 U.S.C.§ 114, 18 U.S.C.§ 241, 18 U.S.C. § 242, 18 U.S.C. § 247, 18 U.S.C. §1035, 18 U.S.C. §1111, 18 U.S.C. §1113, 18 U.S.C. §1117, and 18 U.S.C.§1513 . These statutes shows an intent by Congress to establish a private right and/or to enable a cause of action, or to otherwise enable the within causes of action for the acts or omissions to which they refer, including as negligences per se.

17. The Court has pendant jurisdiction over claims herein which fall under the supplemental jurisdiction of the Court pursuant to 28 U.S.C.§1367 and Article III of the United States Constitution, because of the violation of state law by the defendants.

18. Venue may be set in this district pursuant to 28 U.S.C. § 1391(a) and (d) because the occurrence took place in this district, in Chester County and Delaware County of Pennsylvania.

IV. ALLEGATIONS

19. In 2001 Marjorie Schneller was burdened with a number of infirmities which were typical of her age group. She and her husband sought successfully, through care and personal dedication, to improve their condition. Marjorie was elderly, semi-bedridden, completely cognizant, friendly, and assertive. She still ran the household, swam in a wading pool weather permitting, and would be driven to appointments or shopping. She lived with occasional home care, walking with the assistance of a wheeled walker.

20. James D. Schneller and Marjorie Schneller and George Schneller, would drive to doctor appointments or errands, up to June 27, 2001. The parents involved James D. Schneller in all responsibilities, and since he worked at his office in the home.

21. James Schneller was entrusted with Marjorie Schneller's well being and was specifically trained by George should George's condition decline. James applied injections and other remedies for five years. James was entrusted with acting on his mothers behalf with physicians and nurses.

22. George and Marjorie Schneller in July of 2000 contacted Able Home Care Inc. in order to obtain morning sessions with Home Aides provided by Able Home Care, for the purpose of intermittent assisting of Marjorie C. Schneller with washing and dressing, laundry, and other tasks.

23. Able Home Care welcomed Mr. and Mrs. Schneller with a thorough screening and initiation, and plaintiffs believed that the caliber of the Agency was acceptable, for reasons including the representations of the defendants, the company location in Bryn Mawr, Pennsylvania, and a recommendation from a familiar physician.

24. During the week prior to June 27, 2001, George Schneller underwent pre-operative checkups prior to cataract surgery. Marjorie had had both eyes operated on in the preceding 12 months with great success. On Monday June 25, Able Home Care was requested to provide an

Aide on Wednesday, June 27, because George Schneller and James Schneller were to be away for the entire day at this surgery. Able Home Care was told that it was important to George Schneller and James Schneller that they arrive before George Schneller and James Schneller left for the hospital. Up to this day, either George or James had always been present for Home Aide visits, because James Schneller worked out of a home office in the residence.

25. On the morning of June 27, 2001, Able Home Care, through co-owner Marianne Lilienthal, called to say that they were running late. George Schneller and James Schneller were at a loss, firstly, due to their concern with letting someone into the house alone with Marjorie, secondly, as to the means of accomplishing this, being wary of leaving the door open and not wanting Marjorie Schneller to have to open the door. Marianne Lilienthal also said that the Home Aide, who is Jane Doe 1, was a new employee. Having to attend surgery, plaintiffs decided to leave a door unlocked for access by the Aide.

26. George Schneller and James Schneller returned late that afternoon to find Marjorie in an unrecognizable, physically altered, mentally incoherent, and unconscious state. When touched, Marjorie Schneller would stir and groan loudly on each breath to indicate pain and dismay. Her toes were purple and bent at angles. She could not open her eyes. On questioning, Marjorie Schneller uttered a few unrecognizable words and continued to groan. She then indicated that she wanted to rest. On awakening again she was in pain: sensitive to touch on her stomach and toes, and cantankerous. George Schneller and James Schneller, in shock, with George Schneller just out of eye surgery, continued to observe her. When next awakened, she remained in pain and disoriented. James Schneller, sensing an embarrasment on her part, and strong of limb, personally transported Marjorie to the emergency room at Bryn Mawr hospital.

27. Able Home Care was telephoned during this time, and Marianne Lilienthal reacted as if she had no knowledge of an incident. She agreed to an interview between her, George Schneller, James Schneller, and the aide who had attended Marjorie Schneller, to see if Marjorie Schneller had said or done anything unusual or in the way of last words, or if there was anything else that might be revealed. George Schneller and James Schneller couldn't agree on a time and said they'd call back.

28. On next contact, within 24 hours, Marianne Lilienthal of Able Home Care stated that a meeting would not be possible, and then put forth a version of what had happened: "Marjorie was found disoriented and unable to walk. She was asked if she'd like anything like water or juice and

she was alternately uncommunicative or loud and inaudible. Marjorie was asleep when they left her."

29. Defendants had been told repeatedly of the whereabouts of George Schneller and James Schneller that day, and were aware of the long term nature of their appointment. Thus defendants left the victim for what was a minimum of another four hours [12 PM - 4 PM ] in a disoriented and medically urgent state, at the mercy of an illness or trauma that was killing her, and that permanently damaged her lungs.

30. Marianne Lilienthal and Holly Nelson provided transportation for their employees, and were at the Schneller's residence to pick up Jane Doe 1, the Aide in attendance, and as business owners and registered Nurses, and as corporate trainer and overseer of Home Aides, had a duty to visit each bedside where a new employee had been in attendance for the first time.

31. Marianne Lilienthal and Holly Nelson had responsibility to immediately arrange to transport the plaintiff to a hospital.

32. Bryn Mawr Hospital records clearly show that there was concern in the emergency room for Marjorie Schneller's life. She was immediately placed on oxygen and electrolytes. She was found sensitive to touch on her chest, abdomen, and feet. She was only able to communicate by groaning. She was admitted on the basis of congestive heart failure and chest pain.

33. Doctors reports indicate a great concern about her cognitive state as well, as she had been completely alert immediately prior to this incident.

34. Marjorie Schneller went into, then recovered from a coma, but remained on a respirator. Marjorie Schneller indicated to James Schneller many times that some sort of abuse had taken place that day.

35. Marjorie Schneller, on becoming conscious intermittently and then consistently ten days later, was burdened by this event, and revealed that something personally affronting and severe had happened on that day while George Schneller and James Schneller were away. She remained on a breathing machine and received a tracheotomy, but recuperated enough to gesture with her hands. Marjorie Schneller wouldn`t communicate with James for another week [he visted her twice daily ] except to nod, and despite her husband's deteriorating condition and their devotion to each other, never shared but a few words with him the few times he was able to visit. Marjorie Schneller had experienced more than just a medical episode, she was frightened and nervous. She was also in shock, as was her husband.

36. James Schneller for these reasons telephoned the Tredyffrin Township Police. An officer visited the home, but George Schneller, bereaved and ailing, was opposed to any investigation until further notice. James Schneller aquiesced, and his father's health declined. George Schneller needed increasing amounts of care until his death in October of the same year.

37. The health of George Schneller was notably affected by these events. His ability to read at length and carry on long conversations ended. His wife had had some sort of traumatic event or abuse where the house was left opened. He might not ever see her again. These served as a death blow of the cruelest type. He was deprived of his wife's company during his dying days.

38. Emotional distress has been caused to George Schneller by the callous act of the defendant. This is heightened by the unknown causes of many symptoms of Marjorie Schneller at the time of defendant's reckless action, such as her bruised and bent toes, and her groaning at every word as if in emotional grief over and above her physical pain.

39. The negligence, and refusal of Able Home Care Inc. and all defendants to discuss the situation, caused enormous distress to George Schneller in his last months .

40. Due to the accused actions, George Schneller experienced a great loss of life's pleasures and enjoyment that remained until his death.

41. James Schneller called the three primary physicians of Marjorie Schneller, doctors who had treated her for years and who made daily rounds in the hospital, and asked them to note in their record that they had examined her for signs of any abuse, and what such examinations had revealed.

42. Marjorie Schneller remained on a respirator for the rest of her life. She was fed through a feeding tube for the duration of her illness. She never walked again. She was not able to enjoy any food or liquids.

43. Inordinate amounts of grief and pain resulted, and Marjorie Schneller had to endure these away from her home, spouse, and caregiver. She was deprived of a farewell to her spouse of 52 years, and of privacy and the comfort of her dwelling place while mourning his death.

44. George Schneller died October 30, 2001. Marjorie Schneller died March 31, 2002.

45. Marjorie Schneller's death certificate states the cause of death as sepsis syndrome. This is a blood infection often caused, and known to continually reapppear, through the use of invasive

tubes like breathing equipment, which encourage and harbor lethal diseases. Respiratory failure and congestive heart failure were listed as ancillary causes of death, and both were listed as concerns in the emergency room.

46. Marjorie Schneller, while unable to talk except for brief moments, affirmed that abuse had taken place that day. This was reinforced by her composure, when not in coma, for the next week: withdrawn and in shock. The presence of breathing apparatus reigned as she grew 'well' and she did not reveal the nature of this abuse to James Schneller in the following months before her death. She only spoke with her husband briefly as his illness became more pronounced and he was forced to remain at home.

47. Marjorie Schneller was greatly fearful of the event or events and perpetrators and remained so.

48. Marjorie Schneller was greatly fearful of revealing to James Schneller the nature and details of what had occurred, and remained so for the rest of her life.

49. The circumstances and the behavior of the victim showed the involvement of third parties in said harmful acts.

50. The daily rigors of a respirator-dependant individual are a far cry from dealing with arthritis in the comfort of one's home. Years of work and care on the part of George Schneller, and on the part of James Schneller, were undone because of the neglect of the defendants.

51. Inaction by the defendant has directly resulted in a series of transgressions by other parties.

52. Estate administrators, encouraged by the illness of Marjorie Schneller and the devastating effects of her illness on George Schneller, wrongly influenced them, attempted to enable a new will whose terms stood in direct contradiction to the wills in force, failed to properly administer both estates, wrongfully evicted and impoverished James Schneller, wrongfully sold in near entirety the parents belongings, and in addition to numerous other wrongful acts, caused legal fees in excess of $ 200,000.00.

V. RELIEF

WHEREFORE, Plaintiff respectfully prays relief due to the following:

COUNT I - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS - DEPRIVING PERSONS OF RIGHTS AND PRIVILEGES

Heirs And Beneficiaries Of Marjorie C. Schneller, James D. Schneller, Trustee Ad Litem; Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v. Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

53. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

54. At all times mentioned herein and material hereto, the defendants were charged with the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations; and the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees.

55. Defendants in and during their acts alleged in rhis complaint conspired for the purpose of depriving plaintiffs of right to defend life, liberty, and property, and impeding, hindering, obstructing, and defeating, the due course of justice directed in the laws of Pennsylvania and the United States of America, and with the intent to deny plaintiffs the equal protection of the laws, and to injure plaintiffs and their property, including as retaliation and obstruction for lawfully enforcing, and attempting to enforce, their rights, and the rights of a class(es) of persons, to the equal protection of the laws.

56. Defendants in so conspiring acted purposefully, and under color of law, regulation, custom, and practice, and as individuals,

57. Defendants in their acts as enumerated in this complaint furthered their conspiracy, by:

58. Defendants conspired to deprive Marjorie C. Schneller of proper care, life, longevity, happiness, expectation of recuperation and life's basic comforts, and other liberties.

59. Defendants conspired to make Marjorie C. Schneller's life harrowing and extremely painful. Defendants conspired to cause George Schneller and James Schneller continual severe trauma, regular contradictions, disappointments and harms, and the loss of his parents who were

his friends.

60. Defendants conspired for the purpose of impeding, hindering, obstructing, and defeating, the due course of justice in the Commonwealth and Nation, with the intent to deny plaintiffs the equal protection of the laws, equal privileges and immunities, including the deprivation of rights that are secured by the federal statutes including those asserted within this complaint.

61. Defendants conspired as claimed herein foor the purpose of retaliating and punishing plaintiffs for lawfully enforcing and attempting to enforce, their rights, and the rights of class(es) of persons.

62. Defendants' acts constitute a willful deprival to plaintiffs of equal protection of the laws, including in their class according to gender, age, religious belief, and/or marital status.

63. Defendants' purpose was achieved, so that plaintiffs were injured in their person and property and deprived of the rights and privileges of citizens of the United States including to life and privacy.

64. Defendants conspired for the purpose of preventing the Commonwealth of Pennsylvania from securing to plaintiffs and to all persons within the Commonwealth of Pennsylvania fundamental rights and liberty interests, and the equal protection of the laws.

65. A duty existed for defendants who are licensed professionals and regulated businesses to provide, and to not obstruct, due process, where for instance numerous avenues to report violations are set up in the statutes and regulations regarding them.

66. Plaintiffs were denied the due process afforded by those Federal and State laws and regulations which require disclosure, investigation, hearing, and rectification of all wrongful acts perpetrated by professionals and by facility personnel, and such was directly further caused by the acts of all of the defendants in this complaint.

67. Defendants breached confidentiality of plaintiffs.

68. Defendants violated statutes of Congress and of the Commonwealth. Plaintiffs because of these violations were deprived of due process, life, liberty, and/or property.

69. Defendants violation of statutes of Congress and of the Commonwealth caused injury to plaintiffs.

70. The rights sought to be protected by plaintiffs are the rights of a class(es) of persons, which

are discriminated against, and which are an identifiable group which is susceptible to discrimination of the sort herein decribed.

71. Defendants discriminated against the source of the plaintiff's stance, and on the basis of immutable characteristics including gender, age, religious belief, and marital status.

72. Defendants, holding plaintiff Marjorie C. Schneller against her will, acted in conspiracy, with malice, to deprive plaintiffs' rights and foundational privileges and immunities, including their rights to life, privacy, security, right to locomotion, interraction, and to meaningful medical care.

73. The acts of defendants wilfully caused loss of life and liberty and all additional harms as stated in this claim, including the victim's death, a strict immobility and fear of death imposed , and suffering including assault and anguish that life was to be ended through an intentional ending, rather than extended, all of this inflicted additionally upon George H. Schneller, and without the company of his beloved, Marjorie C. Schneller .

74. Marjorie C.. Schneller was deprived of liberty, property, and, ultimately, life itself, without an affording by any party, and occlusion by all parties of that right to notice and hearing afforded under federal law to the incapacitated and to those whose life support is endangered. Because of the acts of the defendants, Marjorie C. Schneller subsequently became repeatedly subjected to these wrongs by successive third parties.

75. James Schneller as caregiver was deprived of his standing as representative and caregiver including as best friend of the victim. Defendants' acts pointedly deprived plaintiffs of their right to privacy in the family relationship.

76. Because of the defendants' conspiracy, whatever access to the Courts and remedies were available to plaintiffs, were not freely exercisable without hindrance nor fear of retaliation.

77. Defendants' acts constitute a willful deprival to plaintiffs, without due process of law, of essential rights and liberties including the right to possession and defense of property, the right to security in surroundings and possessions, and the right to privacy, as guaranteed under the United States Constitution.

78. Plaintiffs' rights were infringed upon through selective limitations to plaintiffs' resistance, by defendants' acts in conspiracy, which were, in an unconstitutional manner, based on the fact that plaintiffs were not represented by an attorney, or had not filed suit, or similar threshold

circumstances.

79. For these reasons including as stated in the entirety of this complaint, defendants are liable to plaintiffs under 42 U.S.C.A.§ 1985(3) entitled Conspiracy to interfere with civil rights.

80. Defendants' actions were negligent, willful, wanton, and reckless, thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 2 - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS - OBSTRUCTING JUSTICE AND INTIMIDATING PARTIES

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

81. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

82. At all times mentioned herein and material hereto, the defendants were charged with the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations; and the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees.

83. Defendants in their acts as enumerated in this complaint conspired for the purpose of impeding, hindering, obstructing, and defeating, the due course of justice enjoyed by citizens, with the intent to deny plaintiffs the equal protection of the laws, and to injure plaintiffs and their property for lawfully enforcing and attempting to enforce, their right, and the right of a class(es) of persons, to the equal protection of the laws.

84. Defendants in their conspiracy went upon the highway, certain of them entering the Commonwealth of Pennsylvania from foreign states, and all defendants entered into the residence and place of solace of Marjorie C. Schneller and forced the acts herein complained of upon her.

85. Defendants conspired to prevent by force, intimidation, and threat, plaintiffs' exercising of rights and privileges of citizens of the United States, and caused to be done acts in furtherance of the object of such conspiracy, whereby plaintiffs were severely injured and killed and additionally deprived of having and exercising rights and privileges of citizens of the United States, including the right to privacy and family relationships.

86. Defendants in their conspiracy to prevent by force, intimidation, and threat intended to deprive classes of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.

87. Defendants confined Marjorie C. Schneller as stated in these paragraphs, with the intention of facilitating commission of felonies, and flight thereafter, and at risk of serious bodily injury to her, and to inflict bodily injury on her, terrorize her, and euthanize and murder her, and terrorize her husband and her son, her caregivers, and to interfere with the performance by public officials of any governmental or political function, such as investigation by Protective Services and by law enforcement, and investigation by the County and Township at hand.

88. As stated in the preceding Count, defendants conspired in said premises to deprive plaintiffs of the equal privileges and immunities under the laws; and to injure plaintiffs and their property in retribution for lawfully enforcing, and in retribution for attempting to enforce, their rights.

89. Acts of battery which were perpetrated on Marjorie C.. Schneller were acts to injure plaintiffs and their property in retribution for lawfully enforcing, and in retribution for attempting to enforce their rights, and other retributions, preventions and obstructions.

90. Plaintiffs were denied the due process afforded by State law regarding advance health directives by said defendants who are regulated individuals and firm under color of law.

91. Plaintiffs notified all parties that they stood firm against any deprival of care and against removal of care.

92. Any claimed assisted death of the victim, was made through the illegal use of Federal funds.

93. Defendants as stated in the allegations condoned and perpetrated acts which constituted retaliation, intimidation, confusion, diversion, threat, and obstruction of justice. Defendants caused and attempted to cause depletion and trauma to plaintiffs' mental and physical strength and capability. Defendants perpetrated such acts with knowledge and intent that at the time of death or disability much of the accusations against the defendants would go with the victims to coma or to the grave.

94. Defendants conspired for the purpose of preventing and hindering the Commonwealth of Pennsylvania from giving and securing to plaintiffs and to all persons within the Commonwealth of Pennsylvania the equal protection of the laws, as rightful for classes including those of gender, age, religious belief, and/or marital status. Where such a decisive violation of rights and death was perpetrated, many more were sure to follow. Where such acts of intimidation and retribution had succeeded, defendants and similarly situated third parties in the public service were likely to be encouraged in such acts and to repeat them, and to refer to them in conversations with their peers in the same fields of practice. The class(es) discriminated against would fall deeper into endangerment of discrimination and losses of constitutional rights.

95. Defendants' acts constitute criminal assault and criminal maiming.

96. Whatever access to the Courts and remedies were available to plaintiffs were not freely exercisable without hindrance nor fear of retaliation by said conspiracy, and remain so.

97. Defendants' conspiracy in said acts, and in any and all defendants' neglect to prevent said acts, constitute a willful deprival to plaintiffs of the equal protection of the laws, and a deprival to plaintiffs, without due process of law where relevant, of essential rights and liberties which are guaranteed by the United States Constitution, including the right to live, to eat, to speak, to privacy, to choose one's daily regimen and health program, and to family interraction, and their right to foundational privileges and immunities, and to life, liberty, and property.

98. For all of these reasons and as set forth throughout the complaint, defendants are liable to plaintiffs including under 42 U.S.C.A.§ 1985(2) because they conspired to interfere with plaintiffs' civil rights and to deprive and obstruct justice and intimidate parties, and in furtherance of said conspiracy they injured plaintiffs.

99. Defendants' actions were negligent, willful, wanton, and reckless, thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 3 - ASSAULT, BATTERY, AGGRAVATED ASSAULT, and RECKLESS ENDANGERMENT

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

100. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

101. At all times mentioned herein and material hereto, the defendants were charged with the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees, and the responsibility to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations.

102. Defendants in their acts as enumerated in this complaint perpetrated assault, battery and aggravated assault on the person of Marjorie C. Schneller;

103. Defendants attempted by physical menace to put Marjorie Schneller in fear of imminent serious bodily injury.

104. Defendants attempted to cause serious bodily injury to Marjorie Schneller and to cause such injury intentionally, knowingly and recklessly under circumstances manifesting extreme indifference to the value of human life.

105. Defendants intentionally, knowingly and recklessly caused mortal bodily injury to Marjorie C. Schneller.

106. Defendants recklessly engaged in conduct which placed plaintiffs in danger of death and serious bodily injury.

107. Defendants' actions were negligent, willful, intentional, and reckless, thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 4 - CIVIL ACTION FOR DEPRIVATION OF RIGHTS

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

108. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

109. Defendants, as regulatees of the Federal, State and Local government, as licensed professionals, and as citizens, had a duty to act within the law and to adhere to every law, statute, and rule which applied to them.

110. Defendants, under color of statute, regulation, custom, and usage, of the Commonwealth of Pennsylvania, subjected plaintiffs, and caused plaintiffs to be subjected, to the deprivation of rights and privileges that are secured by the Constitution and laws of Congress.

111. At all times the defendants were required under the United States Constitution and the Acts of Congress to not obstruct, under color of State statute, regulation, custom, usage, nor under the avenues of the legal and administrative process, any rights of the plaintiffs, including for access to courts and remedy of wrongs and errors.

112. In their alleged acts, the defendants, under color of statute, regulation, custom, and usage, caused deprivation of rights to plaintiffs.

113. Defendants were charged with the duty to adhere to the statutory directive of the

Constitution of the United States of America and acts of Congress, and state laws, rules and regulations, and to uphold the medical and/or corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to the standards of care and state laws, rules and regulations, including by their staff and employees.

114. At all times the defendants were required under the Constiturion and Acts of Congress to not obstruct nor conspire to obstruct any avenues of law and due process which were available to the defendants, including for remedy of wrongs and errors, and as licensed professionals, facility operators, and fiduciaries and attorneys, to be candid with defendants about all aspects of diagnosis, treatment, administration, and all other occurrences of import.

115. Plaintiffs in the acts alleged were continually deprived the due process, and rights, liberties, privileges and immunities, which are guaranteed by the Constitution.

116. As a result of the acts of defendants plaintiffs were injured and were deprived of life, liberty, and property.

117. The acts of defendants wilfully caused loss of life and liberty including the victim's death, a strict immobility and fear of death imposed upon her, all without the company of her beloved, and caused suffering to plaintiffs including anguish to George H. Schneller and James D. Schneller, and all additional harms as stated in this claim.

118. Marjorie C. Schneller was caused by the acts of defendants and third parties, subsequent to admission to a hospital, a complete deprival of liberty, property, and, ultimately, life itself, without an affording by any party and occlusion by all parties of that right to notice and hearing, nor administrative solution, afforded under federal law to the incapacitated and to those whose life support is endangered.

119. Defendants acts were intended as a retaliation and an intimidation for the purpose of admonishing and preventing plaintiffs from accessing the Courts, law enforcement, and other means available to them under the laws of Congress and the Pennsylvania Assembly.

120. Defendants' acts directly caused and conspired in a willful deprival to plaintiffs of essential rights and liberties including the right to life, liberty, possession and defense of property, the right to security in surroundings and possessions, and the right to privacy, including as to continuation of life, as guaranteed under the United States Constitution. Defendants' acts pointedly deprived plaintiffs of their right to privacy in the family relationship, and their rights to foundational privileges and immunities.

121. Plaintiff's rights were infringed upon through selective limitations to plaintiff's resistance, by administrative defendants, including under color of law, ordinance, custom, and usage, which were, in an unconstitutional manner, based on the fact that plaintiffs were not represented by an attorney, or had not filed suit, or similar threshold circumstances.

122. Whatever access to the Courts and remedies were available to plaintiffs were not freely exercisable without hindrance nor fear of retaliation.

123. Defendants including for the above reasons are liable to plaintiffs under the Pennsylvania and United States constitutions, and under 42 U.S.C.A.§ 1983 entitled Civil action for deprivation of rights.

124. Plaintiff also claims actions for all violations of rights, pursuant to 42 C.F.R.§ 1983, for all violations of Acts of Congress .

125. Defendants' actions were negligent, willful, wanton, and reckless, thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 5 - NEGLECT TO PREVENT DEPRIVATION OF RIGHTS AND CONSPIRACY FOR DEPRIVATION OF RIGHTS

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

126. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

127. Defendants as citizens, as regulatees of the Federal and State and Local government, as licensed professionals, and as corporate providors of services, had a duty to adhere to the standard of care, to act within the law and to adhere to every law, statute, and rule which applied to them

and every oath which they had sworn in said capacities.

128. Defendants, having knowledge that any and all of the wrongs done or conspired to be done, as enumerated in this complaint, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do.

129. Said wrongful acts were committed.

130. The harms to plaintiffs were caused by said wrongful acts and neglect.

131. A duty existed for defendants who are professionals or otherwise obliged to provide, and to not obstruct, avenues for reporting violations, notifying law enforcement, and all such obligations, where for instance numerous avenues to due process and it's cousins are set up in the statutes regarding their particular specialties.

132. Third parties wrongfully neglected, refused or failed to warn, report or otherwise prevent the acts being inflicted on plaintiffs.

133. Defendants knew that their employees had a background of offensive behavior and/or might otherwise be probable of exhibiting offensive behavior, battery, ot other disruptive behavior and did nothing to prevent same

134. A special relationship existed between defendants, and between defendants and third parties, which created an obligation for defendants to warn and prevent where possible the wrongs inflicted on plaintiffs.

135. Plaintiffs were, further, denied the due process afforded by those Federal and State laws and regulations which require disclosure, investigation, hearing, and rectification of all wrongful acts perpetrated by facility personnel, and such was directly further caused by the acts of all of the defendants in this complaint.

136. Defendants are liable to plaintiffs under 42 U.S.C.A.§ 1986 entitled Neglect to Prevent, and so are liable to plaintiffs for compensatory damages including $ 5,000.00 to the next of kin of Marjorie C. Schneller and George H. Schneller, delay damages pursuant to Pa.R.C.P. 238, interest, and allowable costs of suit.

137. Third parties wrongfully neglect refused or failed to warn report or otherwise prevent the acts being inflicted on plaintiffs.

138. Defendants' actions were negligent, willful, wanton, and reckless, thus entitling plaintiffs to

punitive damages

WHEREFORE, the plaintiffs claim of defendants compensatory damages including $ 5,000.00 to the next of kin of Marjorie C. Schneller and $ 5,000.00 to the next of kin of George H. Schneller, delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit.

COUNT 6 - FAILURE TO WARN

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v. Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

139. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

140. Defendants as citizens, as regulatees of the Federal and State and Local government, as licensed professionals, and as business operators, had a duty to adhere to the standard of care, to act within the law and to adhere to every law, statute, and rule which applied to them and every oath which they had sworn in said capacities.

141. Despite having the phone number for emergency services defendants did not notify 911 of the emergency.

142. Despite having the cell phone number of James Schneller defendants did not notify him and george H. Schneller of the emergency.

143. Defendants negligently failed to warn plaintiffs of the increased risk of death due to their activities and failed to warn of the wilfull and intentional nature of their activities.

144. Defendants, having knowledge that any and all of the wrongs done or conspired to be done, as enumerated in this complaint, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do.

145. Corporate defendants failed to warn plaintiffs of increased danger and likelihood of harm from their employees.

146. Third parties wrongfully neglected, refused or failed to warn, report or otherwise prevent the acts being inflicted on plaintiffs.

147. A special relationship existed between defendants, and between defendants and third parties, which created an obligation for defendants to warn and prevent where possible the wrongs inflicted on plaintiffs.

148. At all relevant times the defendants and other members of the conspiracy were under the supervision and control of Able Home Care Inc.

149. Where not acting intentionally, defendants' negligence was the proximate cause of the harm suffered by plaintiffs.

150. Defendants where they spoke with plaintiffs failed to warn of or correct dangerous conditions and situations that existed.

151. Third parties wrongfully neglected, refused or failed to warn, report or otherwise prevent the acts being inflicted on plaintiffs.

152. At all relevant times the defendants knew of the presence and availability of the caregiver, agents, friends, associates, or close family relatives, of the plaintiffs.

153. At all relevant times a special relationship existed between defendants and between defendants and third parties which created an obligation for defendants to warn and prevent where possible the wrongs inflicted on plaintiffs.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 7- OBSTRUCTION OF JUSTICE

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

154. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

155. At all times mentioned herein and material hereto, the defendants were charged with the duty and responsibility to abide by the law of the land, to responsibly control and train their employees and agents, to hire qualified employees and agents, and to actively prevent wrongful and illegal acts by their employees and agents.

156. Defendants intentionally obstructed, impaired and/or perverted the administration of law and other governmental function by unlawful acts, including:

157. Interfering with the investigation by plaintiffs and by police.

158. Failing to report violations of any statute to employers, insurers, police, and any other entity capable of so informing and/or causing An investigation or other administration of justice.

159. Failing to conform to statutes and regulations requiring reporting of violations, infractions, and any other requirement of reporting.

160. Plaintiffs have repeatedly refused to provide the company records of care given Marjorie C. Schneller, nor the medical and daily records and have improperly opposed subpoenas and other notices that were served on them for said records

161. As claimed in Count 2 defendants acts constituted retaliation, intimidation, confusion, diversion, threat, and obstruction of justice.

162. Defendants caused and attempted to cause depletion and trauma to plaintiffs' mental and physical strength and capability. Defendants perpetrated such acts with knowledge and intent that at the time of death or disability much of the accusations against the defendants would go with the victims to coma or to the grave, and was likely to dissipate due to lack of legal representation.

163. Defendants obstructed or otherwise negatively affected the administration of law and government function through criminal acts including violations of 18 Pa.C.S.§ 4104. Tampering with records or identification. 18 Pa.C.S.§ 4114 - Securing execution of documents by deception, 18 Pa.C.S.§ 4902. Perjury, 18 Pa.C.S.§ 4903. False swearing, 18 Pa.C.S.§ 4904. Unsworn falsification, 18 Pa.C.S.§ 4952, relating to intimidation of witnesses or victims, 18 Pa.C.S.§ 4953, regarding retaliation to witness or victim, 18 Pa.C.S.§ 5101. Obstructing administration of law or other governmental function, 18 Pa.C.S.§ 5105. Hindering apprehension or prosecution, including under section (3) regarding concealing or destroying evidence.

164. Defendants violated Federal statutes including 18 U.S.C. § 1510. Obstruction of criminal investigations, 18 U.S.C. § 1511. Obstruction of State or local law enforcement, 18 U.S.C. § 1512. Tampering with a witness, victim, or an informant, 18 U.S.C. § 1513. Retaliating against a witness, victim, or an informant, and 18 U.S.C. § 1518. Obstruction of criminal investigation into health care.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 8 - FAILURE TO WARN

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

165. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

166. Defendants as citizens, as regulatees of the Federal and State and Local government, as licensed businesses and citizens, and as business operators, had a duty to act within the law and to adhere to every law, statute, and rule which applied to them and any oath which they had sworn in said capacities.

167. Defendants negligently failed to warn plaintiffs of the increased risk of harm due to their activities and failed to warn of the wilfull and intentional nature of their activities.

168. Defendants failed to warn of the deleterious effects of the acts.of other parties or involvees.

169. Defendants failed to warn plaintiffs of the increased risk of loss of life, liberty, and property due to their activities.

170. Defendants, having knowledge that any and all of the wrongs done or conspired to be done, as enumerated in this complaint, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do.

171. Third parties wrongfully neglected, refused or failed to warn, report or otherwise prevent the acts being inflicted on plaintiffs.

172. At all relevant times defendants and other members of the conspiracy were under the supervision and control and acted as agents and employees of defendants.

173. At all relevant times the defendants knew of the presence and availability of the caregiver, agents, friends, associates, or close family relatives, of the plaintiffs.

174. At all relevant times a special relationship existed between defendants and between defendants and third parties which created an obligation for defendants to warn and prevent where possible the wrongs inflicted on plaintiffs.

175. Corporate defendants were at all times responsible for overseeing, supervising, and controlling their members and employees including through competent training, screening, and day to day management of operations, and was at all times responsible for and knowledgable of the acts and performance of it's employees, agents, and servants.

176. Defendants' actions were intentional, willful, wanton, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiff claims of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 9 - BREACH OF CONTRACT

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

177. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

178. At all times mentioned herein and material hereto, the defendants were charged with the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations; and the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees.

179. Defendants had a duty under a contract between them and George H. Schneller and Marjorie C. Schneller. Contracts between parties were established during the occurrence.

180. Defendants put forth their standing as registered nurses in the Commonwealth of Pennsylvania as proof and promise of their company's expertise, high calibre, and dependability.

181. James D. Schneller assisted in the screening of, and the decision to accept and to continue to accept the services of defendants, and acted as contractee.

182. Defendants were paid a fee upon first billing if not earlier and were reimbursed each time they requested such.

183. Defendants had a duty to conform to the contract.

184. Defendants in their conduct breached the contract(s).

185. Defendants in their conduct negligently and intentionally did not abide by the laws and the accepted mores of society.

186. Defendants acts were grossly negligent, intentional, and willful, and were done with a knowledge of the consequences, which included injury to plaintiffs.

187. Defendants in a negligent manner induced the contract with knowledge of deficiencies including that their company's calibre and expertise was substandard and not properly supervised.

188. Breach was notified of to the defendants promptly or as soon as discovered.

189. The conduct of defendants through acts including conspiracy with other defendants, concealment, and fraud, prevented knowledge which was needful to plaintiffs, and caused additional injury.

190. Defendants despite their knowledge of their breach of contract and wrongful conduct, attempted to procure additional payments from George H. Schneller and from his estate.

191. Other parties became liable to plaintiffs through the actions of defendants.

192. Plaintiffs claim fraudulent inducement of contract. Defendants Able Home Care Inc., Marianne Lilienthal, and Holly Nelson misrepresented to plaintiffs the quality of employees that would be provided, the level of screening, oversight, evaluation, and training that their corporation conducted, and the professionalism and competence of the services offered by them.

193. Defendants made said representations with the intent of fooling the plaintiffs and were fully aware that plaintiffs reliance and entering into a contract would cause them a high probability of harm. Plaintiffs relied on the misrepresentations. Plaintiffs were caused to suffer the harms enumerated in this complaint by way of their reliance on said misrepresentations.

194. Defendants' actions were intentional, willful, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 10 - NEGLIGENCE & INTENTIONAL TORT

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

195. Plaintiffs incorporate and make reference to paragraphs 1 to 303 as though set forth in full herein.

196. At all times mentioned herein and material hereto, the defendants were charged with the statutory directive of the Constitution of the United States of America and acts of Congress, and

the Commonwealth of Pennsylvania, and all local laws, and rules and regulations; and the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees.

197. Defendants negligently performed the contract between them and plaintiffs.

198. Defendants in their acts complained of herein breached their duty to plaintiffs.

199. Defendant's breach of contract and breach of their duty to plaintiffs caused injury to plaintiffs including the death of Marjorie Schneller.

200. Defendant's conduct was grossly negligent and intentional.

201. No defendant, whether principal nor employee, including any of whom are professionally licensed, has ever reported any incident or serious incident to the proper department or authority.

202. All of the numerous signposts of error claimed in this complaint were ignored by any defendant, where a finding and reporting of it would likely have put an end to such activities by any other defendant whose judgment was clouded or wrongful.

203. Defendants' conduct has caused harm to Marjorie Schneller and George Schneller and to the Estates of George H. Schneller and Marjorie C. Schneller.

204. Defendants acted negligently per se. Defendants violated the criminal statutes of the . Defendants acted negligently per se and intentionally violated statutes, laws, and regulations of the Commonwealth of Pennsylvania and of the United States Congress, including 29 U.S.C. § 794 et seq. - Rehabilitation act - Nondiscrimination to disabled under Federal grants and programs), 42 U.S.C.§ 2000a et seq - Civil Rights Act, including the Religious Freedom Restoration Act , 42 U.S.C.A. § 2000bb et seq., 42 U.S.C § 10400 et seq. - Family Violence Act, 42 U.S.C. § 6101 et seq. - Age Discrimination Act, 42 U.S.C § 13981 et seq. - Violence to Women Act of 1994, 29 U.S.C. § 794 - Rehabilitation Act , 42 U.S.C. § 3001 et seq. - Programs for Older Americans, 42 C.F.R.§ 1983 et seq, deprivation of rights. 18 U.S.C § 113 Assault, 18 U.S.C § 114 Maiming within maritime and territorial jurisdiction; 18 U.S.C. § 241. Conspiracy against rights, 18 U.S.C. § 242. Deprivation of rights under color of law; 18 U.S.C. § 247. Obstruction of persons in the free exercise of religious beliefs; 18 U.S.C. §1035. False statements relating to health care matters, 18 U.S.C. § 1111, 18 U.S.C. § 1113, 18 U.S.C.§1117 Conspiracy to commit murder; 18 U.S.C.§1513. Retaliating against a witness, victim, or an informant, 18 Pa.C.S.§902 Criminal Solicitation; 18 Pa.C.S. §903 Criminal Conspiracy; 18

Pa.C.S.§2501 et seq., criminal homicide; 18 Pa.C.S.§2505 Causing or aiding suicide; ; 18 Pa.C.S.§2701, 2702 Assault ; 18 Pa.C.S.§2705 Reckless endangerment; 18 Pa.C.S.§2710 Ethnic intimidation; 18 Pa.C.S.§2713 Neglect of Care Dependant Person; 18 Pa.C.S.§2902 Unlawful Restraint; 18 Pa.C.S.§ 4114 - Securing execution of documents by deception; 18 Pa.C.S.§ 4952 Intimidation of witnesses or victims; 18 Pa.C.S.§ 4953 Retaliation against witness, victim or party; 18 Pa.C.S.§ 5101 Obstructing administration of law or other governmental function; 20 Pa.C.S.§ 5409, 5415 regarding utilization of revoked advance health directive; 18 Pa.C.S.§ 5125 Absconding witness; 18 Pa.C.S.§ 5126 Flight to avoid apprehension, trial or punishment. The Protection from Abuse Act; 28 P.S. §211.1 et seq., the Controlled Substance, Drug, Device And Cosmetic Ac; 35 Pa. C.S. § 10225.302 Protective services, Retaliation; 35 Pa. C.S. § 10225.303 Investigation; 35 Pa. C.S. § 10225.701 Mandatory Reporting; 35 Pa. C.S. § 10225.702 Reporting to law enforcement, coroner, district attorney; 40Pa.C.S.§1303.308 Reporting and notification; 40Pa.C.S.§1303.313, 6 Pa.Code § 15.1 et seq (Protective Services For Older Adults), 6 Pa.Code § 20.1 et seq (Family Caregiver Support Program )

205. All of the acts alleged to have been done or not to have been done by defendant, Able Home Care, Inc., were done or not done by said defendant, its agents, ostensible agents, servants, workmen and it's employee Jane Doe and other employees, acting in the course and scope of their employment with and on behalf of said defendant . The responsibilities encompassing said acts were of a kind and nature that the employee is employed to perform. Any and all employees were under the direct supervision and control of Able Home Care Inc.

206. Able Home Care Inc. breached it's duty to properly, and within the law: select, train, supervise, scrutinize,and control and retaining only competent employees; to oversee all persons under their supervision, and to formulate, adopt, and enforce adequate rules and policies to ensure quality care for patients.

207. Where not acting intentionally, defendants' negligence was the proximate cause of the harm suffered by plaintiffs.

208. Defendants' actions were intentional, willful, wanton, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One

hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 11 - WRONGFUL DEATH

Heirs and Beneficiaries of Marjorie C. Schneller, James Schneller, trustee ad litem v. Able Home Care Inc., Mary Ann Lilienthal, Holly Nelson, Jane Doe 1

209. Plaintiffs incorporate by reference paragraphs 1 to 303 as though set forth in full herein.

210. At all times mentioned herein and material hereto, the defendants were charged with the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations; and the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees.

211. Defendant did not provide for an immediate treatment of the plaintiff. Defendant was acting as a home health service provider, as defined in Pa. C.C.18§2713, and Marjorie Schneller was at that time a care dependent person as defined therein.

212. Defendants intentionally, knowingly and recklessly caused serious bodily injury and death by failing to provide treatment, call an ambulance, and immediately transport Marjorie Schneller to an emergency room, all of which were necessary to preserve the health, safety or welfare of Marjorie Schneller, who was a care-dependent person.

213. Able Home Care has breached it's duty to properly and within the laws select, train, supervise, scrutinize,and control and retaining only competent employees, overseeing all employees as to patient care, and formulating, adopting and enforcing adequate rules and policies to ensure quality care for patients.

214. The failure of defendants to care for Mrs. Schneller resulted in her permanent lack of breathing ability, and her weakness, which directly caused her death.

215. By conducting themselves as aforesaid, defendants increased the risk of death, and directly caused the wrongful death of Marjorie Schneller.

216. Defendants in these acts breached their contract with George Schneller and Marjorie Schneller through their reckless, willfull, and wanton deprival of care, carelessness, negligence, obstruction, gross negligence, and fraud.

217. As a direct and proximate result of the defendants' acts including deprivals of civil rights, conspiracy, breach of contract, deprival of care, carelessness, negligence, obstruction, gross negligence, fraud, recklessness and willful, wanton and criminal conduct, Marjorie Schneller was unjustly caused to die, and sustained therefore complete loss of the enjoyment of life, and loss of life's pleasures, goals, and benefits;

218. As a direct and proximate result of the defendants' acts including deprivals of civil rights, conspiracy, breach of contract, deprival of care, carelessness, negligence, obstruction, gross negligence, fraud, recklessness and willful, wanton and criminal conduct, plaintiffs have suffered pecuniary and non-pecuniary losses and are entitled to all damages recoverable under Pennsylvania's Wrongful Death Act, 42 Pa. C.S.A. §8301.

219. As a result of her wrongful death Marjorie Schneller has been prevented from performing all of her usual duties, occupations, recreational activities and avocation, all to her and her beneficiaries' loss and detriment.

220. Plaintiff on behalf of the heirs and beneficiaries of Marjorie Schneller makes claim for the loss of love, affection, services, earnings, support, companionship, comfort, guidance, tutelage, and moral upbringing bestowed upon them by the deceased on a regular basis.

221. Plaintiff James Schneller as personal representative of the estate of George H. Schneller makes claim for the loss of love, services, society, and comfort formerly provided by Marjorie C. Schneller, and all other damages recoverable under the Wrongful Death Statute of the Commonwealth of Pennsylvania, including those listed in the preceding paragraph.

222. James Schneller brings this suit on behalf of those entitled to relief due to the wrongful death of Marjorie Schneller under Pa.R.C.P.2202(b).

223. No action for the wrongful death of the above-named decedent was brought by the above-named decedent's personal representative within the first 6 months after the death of the decedent. No action for the wrongful death of the decedent was brought by the personal representative up to present.

224. The names, ages, relationship and addresses of all those who may be entitled to damages due to the death of the decedent are:

| Name and Address | Age | Relationship |
|---|---|---|
| James Schneller<br>500 E. Lancaster Ave. #111D<br>Radnor, PA 19087 | 52 | son |
| Richard Schneller<br>708 Walker Rd.<br>Great Falls, VA 22066 | 55 | son |
| Beatrice Fennimore<br>5878 Marlborough Rd<br>Pittsburgh, PA 15217 | 59 | daughter |
| Marjorie Zitomer<br>1 Mercer Street<br>McKownville, NY 12203 | 61 | daughter |
| George H. Schneller c/o<br>James Schneller<br>500 East Lancaster Avenue # 111d<br>Radnor, PA 19087 | dec. | husband |

225. James D. Schneller, who is 52 years of age, whose address is 500 East Lancaster Avenue # 111d, Radnor, County of Delaware, State of Pennsylvania, is a suitable and competent person to maintain this wrongful death action, according to law.

WHEREFORE, Plaintiff demands judgment against defendants for compensatory damages in excess of $150,000.00, all damages recoverable under Pennsylvania's Wrongful Death Act, 42 Pa. C.S.A. § 8301, delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 12 - SURVIVAL

Marjorie C. Schneller, deceased; George H. Schneller, deceased v. Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

226. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

227. At all times mentioned herein and material hereto, the defendants were charged with the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees, and the responsibility to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations.

228. The conduct of the defendants complained of in this complaint increased the risk of death, and caused pain and suffering, and death.

229. Defendants' conduct was willful and intentional, and such conduct was willfully disregardful to the life, liberty, property, interests, safety and rights of plaintiffs.

230. The acts of the defendants caused Marjorie Schneller to suffer death prematurely, in pain and mental anguish, in unfamiliar surroundings, without friend or family. She sustained loss of enjoyment of life and loss of life's pleasures.

231. As a direct and proximate result of the foregoing, Marjorie C. Schneller and George H. Schneller have been, and will be in the future, wrongfully deprived of earnings and the right to earn a living.

232. As a result of defendants' unlawful conduct and reckless disregard for others as averred herein, Marjorie C. Schneller and George H. Schneller, and their estates, suffered the actual and substantial losses, for which they possessed rights of action at the time of their death, and for which their estate is entitled to recover, and otherwise entitled to recover, including: damages for pain, suffering, mental anguish, and distress; loss of earning power, less personal maintenance expenses from the time of death through her estimated working lifespan; punitive damages; and any and all other damages recoverable under Pennsylvania's Survival Act, 42 Pa. C.S.A. § 8302,

including losses caused by defendants to the estates.

233. James Schneller was caregiver for both of his parents, plaintiffs Marjorie Schneller and George Schneller, having lived with them in their home for the 36 years. He held power of attorney for Marjorie Schneller at the time of her death, and was without doubt the individual relied upon by her, and had been trained for this role by her husband, a pharmaceutical executive, and was his fathers only caregiver as well.

234. Marjorie Zitomer, the executrix of the estate of Marjorie Schneller, has repeatedly declined to pursue litigation on behalf of the estate, including survival actions.

235. Mrs. Zitomer has stated to parties and others her lifetime requests to testators to not name her as executrix, and her dislike of the task.

236. An order concluding to the administration of the Estate of Marjorie Schneller was entered on December 13, 2005.

237. Where the administrator neglects or refuses to sue, jurisdiction is in the common pleas and not in the orphans' court, and any person having an interest in damages may maintain an action, as trustee ad litem, by suing in the name of the personal representative.

238. James Schneller is a responsible individual, who is personally capable, and with leave of this court, holds the capacity to sue in the name of the executrix of the estate of Marjorie C. Schneller in this action.

239. The executrix Marjorie Zitomer, is named as an involuntary plaintiff in this action.

240. Defendants' actions were intentional, willful, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, plaintiffs demand on behalf of Marjorie Schneller and George H. Schneller, judgment against defendants for compensatory damages in excess of $150,000.00, all damages recoverable under Pennsylvania's Survival Act, 42 Pa. C.S.A. § 8302, delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 13 - FRAUD - FRAUDULENT INDUCEMENT OF CONTRACTS - NEGLIGENT MISREPRESENTATION

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

241. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

242. At all times mentioned herein and material hereto, the defendants were charged with the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees, and the responsibility to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations.

243. Defendants misrepresented to plaintiff's their qualifications and their pledge to supply quality care in order to cause a business contract fopr the provision of home aide care.

244. Defendants put forth their standing as registered nurses in the Commonwealth of Pennsylvania as proof and promise of their company's expertise, high calibre, and dependability.

245. Defendants in a negligent and intentional manner induced the contract with knowledge of deficiencies including that their company's calibre and expertise was substandard and not properly supervised.

246. Defendants intended that plaintiffs rely on their misrepresentations.

247. This reliance caused Marjorie C. Schneller, and her estate, and George Schneller and his estate to suffer great harm. Harm also was caused by the reliance on said misrepresentations by caregiver, personal represenitive, and executor de son tort James Schneller.

248. Plaintiffs in agreeing to the contract lacked a meaningful choice in accepting it.

249. The contract unreasonably favored the defendants.

250. Plaintiffs had little or no choice but to assent to the terms of the contract under the circumstances.

251. Defendants put forth to plaintiffs that their wisdom, experience, skill and knowledge, and superior skill and knowledge, would be fully exercised in the contract.

252. The conduct of defendants through acts including conspiracy with other defendants, concealment, and fraud, prevented knowledge which was needful to plaintiffs, and caused additional injury.

253. Defendants' concealment of facts, of manipulations and fraud, and other acts, was in the same manner relied upon by the plaintiffs, and harm resulted to them as a result of this reliance.

254. Defendants informed Marjorie Schneller at the sudden onset of illness that she was under their careful treatment, that her condition was not worthy of emergency care, and otherwise prevented and discouraged her from calling the police or ambulance herself.

255. Defendant Mary Anne Lilienthal at first contact by James Schneller and George Schneller falsely represented that she was unaware of any situation that had occurred with Marjorie Schneller's care at the time of the occurrence. Plaintiff's relied on this misrepresentation and delayed for 24 hours their investigation, at which time Mary Anne Lilienthal falsely represented to James Schneller and George Schneller that Marjorie Schneller's condition was not a result of improper care and battery of employee Jane Doe 1, and that the nurses aide session ended in a normal manner without indication of alarm. Plaintiff's relied on this statement. Defendants' evasion and false statements delayed further action, caused enormous anguish, and caused George Schneller thereby to decline any investigation by the police, which caused harms including a fatal delay in any criminal investigation and questioning of the employee Jane Doe 1.

256. Defendants despite their knowledge of their breach of contract and wrongful conduct, attempted to procure additional payments from George H. Schneller and from his estate, through fraudulent representation to personal representative James Schneller that such monies were lawfully and urgently owing, while concealing from James Schneller their breach of contract.

257. James Schneller relied on these misrepresentations and forwarded a check to defendants, and inferred a violation of the law on his part.

258. Plaintiffs were harmed by their reliance on the above stated misrepresentations in additional ways.

259. Other parties became liable to plaintiffs through the above stated actions of defendants.

260. Defendants acts were grossly negligent, intentional, and willful, and were done with a knowledge of the consequences, which included injury to plaintiffs.

261. Defendants' actions were intentional, willful, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 14 - CONSPIRACY

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

262. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

263. At all times mentioned herein and material hereto, the defendants were charged with the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees, and the responsibility to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations.

264. In all of the within named acts, the defendants, including nurses and other employees, and third parties, acted in a conspiratorial manner in order to facilitate deprival of care, inappropriate care, harm, anguish, and death.

265. The result obtained was the common purpose between the actors who acted in concert,

266. The actors facilitated their intended purpose through overt acts or omissions ;

267. The conspiracy intended to wrongfully harm and kill the victim and to steer her towards death, including through deprival of care, omission of care, omission of basic services, omission of supportive services, prevention of rights, and causing of stress.

268. The conspiracy intended to prevent treatment of life threatening illness.

269. The actors further conspired to conceal such acts from the victim and from the the caregivers.

270. The conspiracy intended to cause mental anguish, and emotional distress.

271. The defendants had a duty to properly oversee, advise, disclose, and confer with plaintiffs, under contracts between them and the plaintiffs.

272. These acts were accompanied by malice.

273. All of the numerous signposts of error claimed in this complaint were ignored by any defendant, where a finding and reporting would likely have put an end to such activities by any other defendant whose judgement was otherwise clouded.

274. No defendant, whether principal nor employee, including any of whom are professionally licensed, has to the knowledge of plaintiffs ever reported any incident or serious incident to the proper department or authority.

275. Defendants' actions were intentional, willful, wanton, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $50,000.00, delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 15 - WRONGFUL INITIATION OF SUIT

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v.
Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

276. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

277. At all times mentioned herein and material hereto, the defendants were charged with the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees, and the responsibility to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations.

278. Defendants instituted suit for amounts owed against plaintiffs without probable cause.

279. Defendants instituted suit against plaintiffs with full knowledge of their blatant breach of contract.

280. Where these acts happened to be based on an accepted principal of law, defendants performed such litigation in a manner other than intended in the law and for a purpose other than that intended, including for the purpose of distraction, divsersion, and intimidation.

281. Defendants' actions were intentional, willful, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants punitive damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 16 - NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v. Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

282. Plaintiffs incorporate by reference paragraphs 1 through 303 as if fully set forth at length herein.

283. At all times mentioned herein and material hereto, the defendants were charged with the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees, and the responsibility to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations.

284. Defendant's in their acts as enumerated herein perpetrated a debilitating and life threatening neglect of care to Marjorie Schneller which caused her injury, pain, shock, suffering, anguish, and fear for her life.

285. Defendant through their acts caused the death of Marjorie Schneller which was preceded by a period of illness and pain and suffering to Marjorie Schneller, which caused serious long term emotional distress.

286. Defendant's actions caused Marjorie Schneller grief, helplessness, embarrasment, anguish, and anxiety, and these grew to include lack of sleep, depression, and the enormous burden of onset of death, all of these caused by the acts of the defendants to be suffered by her while without the comfort, companionship, solace, and society of her husband George Schneller, whom she know to be mortally ill and thus compounding of said anguish and separatedness.

287. Defendant's actions caused George Schneller shock, grief, helplessness, embarrasment, anguish, and anxiety, and these grew to include lack of sleep, depression, all of these occurring at onset of death, and caused by the acts of the defendants to be suffered while without the comfort, companionship, solace, and society of his wife Marjorie Schneller, and amidst approaching death and accompanying anguish already associated therewith.

288. Defendants' actions caused James Schneller substantial emotional disatress which was accompanied by phyical ailments and symptoms.

289. Plaintiff's observed first hand the injustices, as they occurred, to plaintiffs' spouses, child, and parents.

290. Defendants' actions were intentional, willful, wanton, and reckless thus entitling plaintiffs to punitive damages.

WHEREFORE, the plaintiffs claim of defendants compensatory damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

COUNT 17 - PUNITIVE DAMAGES

Marjorie C. Schneller, deceased; George H. Schneller, deceased; James D. Schneller v. Able Home Care Inc., Marianne Lilienthal, Holly Nelson, Jane Doe 1

291. Plaintiffs incorporate paragraphs 1 to 303 as though set forth in full herein.

292. At all times mentioned herein and material hereto, the defendants were charged with the corporate responsibility to maintain qualified staff, establish procedures, and enforce the adherence to they and to the standards of care and procedures of their profession, by their staff and employees, and the responsibility to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress, and the Commonwealth of Pennsylvania, and all local laws, and rules and regulations.

293. As a result of the careless, grossly negligent and intentional conduct of the defendants herein, Marjorie Schneller was caused to suffer physically and emotionally, and ultimately died as a result of defendant's conduct;

294. Defendants' acts were reckless, wanton, willful and outrageous and resulted in the continual perception of harm to plaintiffs by plaintiffs.

295. Defendants' actions caused emotional distress, anxiety, and dismay to George Schneller on an everyday basis, and physical symptoms which caused him physical pain and trauma.

296. Defendants' actions caused emotional distress, anxiety, and dismay to the Schneller heirs and beneficiaries.

297. Defendant's acts and omissions led to plaintiffs' humiliation and severe trauma.

298. Plaintiffs were prevented by defendants from investigating the acts which originally caused Marjorie Schneller's hospitalization, and witnessed mistreatment of her in this setting where they were not only near, but nevertheless unable to prevent further slights.

299. The acts and omissions of defendants resulted in additional and succeeding outrageous harms to plaintiffs.

300. Defendants acts were intentional and outrageous.

301. A jury could conclude that the defendants knew that their acts created a high risk of harm and pain and suffering to the deceased and to all plaintiffs, and a high risk of the resulting effects on the longevity and quality of life of the victim, and that defendants nevertheless acted in disregard and indifference to that risk.

302. Any observer of the events complained of herein would be shocked and outraged.

WHEREFORE, the plaintiffs claim of defendants punitive damages in excess of One hundred and Fifty Thousand Dollars ($150,000.00), delay damages pursuant to Pa. R.C.P. 238, interest, and allowable costs of suit.

By James D Schneller [signature]
James D. Schneller pro se

Date: February 20, 2008